[No. S036170. Dec. 19, 1994.]

LA JOLLA BEACH AND TENNIS CLUB, INC., et al., Plaintiffs and Appellants, v.
INDUSTRIAL INDEMNITY COMPANY, Defendant and Respondent.

## COUNSEL

H. Paul Kondrick, Seltzer, Caplan, Wilkins & McMahon and Michael H. Riney for Plaintiffs and Appellants.

Craig R. Berne, James T. Linford, Adleson, Hess, Christensen & Kelly, Randy M. Hess, Duane W. Shewaga, Brobeck, Phleger & Harrison, David M. Halbreich, David E. Weiss, Farella, Braun & Martel, William R. Friedrich, Dennis M. Cusack, Kathryn Oliver, Luce, Forward, Hamilton & Scripps, George S. Howard, Jr., and Albert T. Harutunian III as Amici Curiae on behalf of Plaintiffs and Appellants.

Morris, Polich & Purdy, Lawrence E. Picone, Gerald P. Schneeweis, Sonnenschein, Nath & Rosenthal, Paul E. B. Glad, John Leland Williams, Rhonda V. Magee and Andre Hassid for Defendant and Respondent.

Craig A. Berrington, Bruce Wood, Patrick J. McNally, Monica Lussnig, Crosby, Heafey, Roach & May, Raoul D. Kennedy, Ezra Hendon, Chernow & Lieb, Diane Heidenreich, Victor Rabinowitz, McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, James H. Wilkins, Wendy S. Lloyd, Buchalter, Nemer, Fields & Younger, Roxani M. Gillespie, Richard de Saint Phalle, Marie G. Quashnock, Charles W. Savage, Barbara Gallios-Lee, William P. Molmen, Lewis, D'Amato, Brisbois & Bisgaard, Duane C. Musfelt, Horvitz & Levy, Ellis J. Horvitz, Daniel J. Gonzalez, Julie L.Woods, Hancock, Rothert & Bunshoft, Ray L. Wong, Paul J. Killion and Monica M. Slakey as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

ARABIAN, J.—This case presents a convergence of two distinct but related areas of law: insurance and workers' compensation. In particular, we determine whether a workers' compensation insurer has a duty to defend a former employee's civil suit alleging wrongful termination in violation of public policy. We conclude that no reasonable construction of the workers' compensation insurance contract provides coverage for such a suit, and hence there is no duty to defend. We therefore reverse the Court of Appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

*The Underlying Action*

On April 24, 1986, Adnan Saleh filed a complaint against the Sea Lodge, the F. W. Kellogg Trust and Estate (Trust), the then owner of the lodge, and Robert Kellogg, manager of the lodge. Saleh alleged that he had been employed at the Sea Lodge as the restaurant manager for approximately six years until his termination on April 1, 1986. According to the complaint Saleh "was terminated in whole or in part because he was not 'white'. Prior to plaintiff's termination, he was told not to hire any more of 'his own kind', i.e. Palestinian or Arabic ancestried [*sic*] persons, and not to hire any 'foreigners.'" Saleh further alleged that Robert Kellogg told various employees of the Sea Lodge that "they were not to hire any foreigners except for some Mexicans, who should be kept in back."

Saleh alleged this conduct gave rise to claims for breach of an employment agreement, breach of the implied covenant of good faith and fair dealing, wrongful termination, intentional infliction of emotional distress, and violation of the Fair Employment and Housing Act. On May 9, 1986, the Trust tendered defense of the Saleh complaint to its workers' compensation carrier, defendant Industrial Indemnity Company (Industrial)[1]

The Trust also tendered defense to its comprehensive general and excess liability carrier, American National Fire Insurance Company (American).

---

[1]The policy Industrial provided to the Trust is designated "Workers' Compensation and Employers' Liability." Part 1 of the policy, the only part at issue in this case, is designated "Workers Compensation Insurance." Paragraph B of part 1 states, "We will pay promptly when due the benefits required of you by the workers compensation law." Paragraph C provides, "We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. [¶] We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."

Paragraph F of part 1 provides, "You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because . . . of your serious and willful misconduct. . . . [or because] you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law."

Part 2 of the policy is designated "Employers Liability Insurance." Paragraph B provides in part, "[w]e will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance." Paragraph C excludes "any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law." It further excludes "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law."

Paragraph D provides in part: "We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the

Industrial refused to provide the Trust with a defense. American initially accepted the tender under a reservation of rights but later withdrew its defense.

In responding to Saleh's complaint, the Trust raised as an affirmative defense the exclusive jurisdiction of the Workers' Compensation Appeals Board. It also took the position that Saleh had not been terminated but had voluntarily resigned. The Trust denied it had engaged in any discriminatory conduct. The parties eventually settled. Saleh was paid $16,500.

*The Current Action*

On or about August 29, 1990, plaintiff La Jolla Beach and Tennis Club, Inc., the Trust's successor in interest, and Kellogg (La Jolla) brought this action against Industrial and American.[2] La Jolla sought declaratory relief regarding Industrial's obligation to defend and indemnify it in the Saleh action. La Jolla further alleged that Industrial's failure to provide it with a defense or indemnity in that action gave rise to claims for breach of contract and tortious breach of the implied covenant of good faith and fair dealing.

Industrial moved for summary judgment asserting it had no duty to defend or indemnify La Jolla under either part 1 or part 2 of the policy. (See *ante*, fn. 1.) The trial court granted Industrial's motion, and judgment was entered. La Jolla appealed solely on the ground that Industrial had a duty to defend under part 1 of the policy, or the workers' compensation coverage.

The Court of Appeal reversed. Relying on a recent Court of Appeal opinion, *Wong* v. *State Compensation Ins. Fund* (1993) 12 Cal.App.4th 686 [16 Cal.Rptr.2d 1], the court concluded that Saleh's complaint set forth facts that would support a potential claim covered by part 1. The court noted that Industrial "defines its workers' compensation coverage in terms of amounts payable under the workers' compensation law. Thus, when our Supreme Court defined the scope of the workers' compensation remedy, of necessity the court also defined the scope of Industrial's workers' compensation coverage."

The Court of Appeal further noted that this court has held, "that, in general, workers' compensation is the exclusive remedy for emotional distress caused by a termination of employment." Accordingly, the court

right to investigate and settle these claims, proceedings and suits. [¶] We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."

[2] American settled with La Jolla in the trial court, and hence is not a party on appeal. Accordingly, we discuss only those claims by La Jolla against Industrial with regard to the Saleh action.

reasoned, "where an employee claims he suffered emotional distress as a result of his termination, he has made a claim which comes within the workers' compensation provisions of policies like Industrial's."

The Court of Appeal rejected Industrial's argument that Saleh's choice of a civil forum precluded coverage or defense under the workers' compensation policy. It stated that the policy language did not expressly exclude defense of civil actions. "Moreover, it is well established that while the superior court does not have jurisdiction to grant relief for injuries suffered within the course and scope of employment, it does have, concurrently with the Workers' Compensation Appeals Board (WCAB), the jurisdiction to determine jurisdiction. [Citation.] 'Thus, if there is a final determination as to the matter of coverage (i.e., of jurisdiction) in either the [WCAB] or the superior court proceedings, such determination will be res judicata in subsequent proceedings before the other tribunal between the same parties or those privy to them.' [Citation.] [¶] In our view the undisputed jurisdiction of the civil courts to determine the existence of WCAB jurisdiction lends considerable support to the conclusion . . . that insured employers 'could reasonably expect an appropriate defense to any claim based on injuries potentially covered by the policy . . . regardless of whether the plaintiff's choice of forum was appropriate.' "

Applying these principles, the Court of Appeal concluded that "Insofar as Saleh alleged he suffered emotional distress upon his termination, his claim" was potentially "within the scope of the workers' compensation act. . . . Thus it had the potential for coming within the coverage provisions of part 1 of the Industrial policy," and this potential gave "rise to a duty to defend."

The court noted, however, that Saleh alleged "discriminatory termination" had caused his emotional distress. "Because liability on discrimination claims falls outside the scope of our workers' compensation law, it also falls outside the scope of a workers' compensation insurance policy." Nonetheless, the court concluded Saleh's claims might still fall within part 1 of the policy. It reasoned, "If La Jolla was able to establish it had not terminated Saleh because of his Palestinian ancestry and that his termination did not otherwise violate public policy, Saleh would still have a remedy under the workers' compensation law for the emotional distress he suffered upon his termination." "Given this potential, La Jolla was entitled to a defense under part 1 of the policy." Industrial's petition for rehearing was denied.

We granted Industrial's petition for review.[3]

## II. Discussion

The question before us is whether part 1 of Industrial's workers' compensation policy potentially provided coverage for the claims asserted in Saleh's complaint, and thus gave rise to a duty to defend those claims. To answer this question, we first review the applicable principles of workers' compensation and insurance law.

### A. *Background*

#### 1. *Workers' Compensation*

Pursuant to constitutional mandate, the Legislature has vested the Workers' Compensation Appeals Board (WCAB) with exclusive jurisdiction over claims for workers' compensation benefits. (Cal. Const., art. XIV, § 4, Lab. Code, § 5300.) Accordingly, the superior court and the WCAB in this case "do *not* have concurrent jurisdiction over the whole of the controversy, and one of them will be without jurisdiction to grant any relief whatsoever, depending upon whether or not the injuries were suffered within the course and scope of an employment relationship and so covered by the workmen's compensation laws." (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 82-83 [293 P.2d 18], italics in original.) "It is elementary that the type and extent of relief which can be granted and the factors by which such relief is determined differ materially between the two tribunals; the superior court cannot award workmen's compensation benefits, and the commission cannot award damages for injuries." (*Id.* at p. 83.) The only point of concurrent jurisdiction of the two tribunals is jurisdiction to determine jurisdiction; jurisdiction once determined is exclusive, not concurrent. (*Ibid.*)

"[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is

---

[3]In its answer to the petition for review, La Jolla requested that if review were granted, we also address the issue of whether Industrial had a duty to defend La Jolla under the employer's liability portion (pt. 2) of the insurance policy. La Jolla appealed from the summary judgment entered in favor of Industrial solely on the ground that Industrial had a duty to defend under part 1 of the policy, or the workers' compensation coverage. The Court of Appeal's opinion is limited to this issue. As there was no reason for us to address coverage under part 2 of the policy in the first instance, on September 15, 1994, the court issued an order under California Rules of Court, rule 29.2(b), limiting the issues to be argued to those raised in Industrial's petition for review.

afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. . . . The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054].)

In California, every employer except the state is required to "secure the payment of compensation." (Lab. Code, § 3700.) This mandate is satisfied by either purchasing workers' compensation insurance, or self-insuring. (*Ibid.*) ■ "The terms of workers' compensation policies issued in California are strictly governed by statute, and each policy is conclusively presumed to contain all the provisions required by law." (1 Cal. Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar 1994) § 1.28, pp. 1-21 to 1-22; Ins. Code, § 11650.)

The statutes carefully distinguish between "compensation" and "damages." " 'Compensation' means compensation under Division 4 [the Workers' Compensation and Insurance section of the Labor Code] and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence." (Lab. Code, § 3207; Ins. Code, § 11630 ["As used in this chapter [Chapter 2—Workers' Compensation Policies], the term 'compensation' means the benefits insured by workers' compensation insurance."].) " 'Damages' means the recovery allowed in an action at law as contrasted with compensation." (Lab. Code, § 3209.)

■ Workers' compensation policies generally contain two types of coverage: The first is workers' compensation insurance (part 1 in the policy at issue in this case), "under which the insurer agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled." (1 Cal. Liability Insurance Practice: Claims and Litigation, *supra*, § 1.28, p. 1-22.) The second, which is optional, is employers' liability insurance (part 2 in the policy at issue in this case). (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 914 [226 Cal.Rptr. 558, 718 P.2d 920].) This insurance "protects employers against lawsuits by employees who are injured in the course of employment, but whose injuries are not compensable under the workers' compensation laws." (1 Cal. Liability Insurance Practice, *supra*, § 1.28, p. 1-22.) This coverage "also indemnifies employers against civil suits brought by employees." (*Ibid.*)

"[E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a 'gap-filler,' providing protection to the employer in those situations where the

employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law. . . . Generally, these two kinds of coverage are mutually exclusive." (*Producers Dairy Delivery Co.,* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 916, fn. omitted.)

### 2. *Principles Governing Interpretation of Insurance Policies*

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; see *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].) "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.)" (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1264.) "Such intent is to be inferred, if possible, solely from the written provisions of the contract." (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822.) "If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)" (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1264.) Moreover, if the policy's terms are " 'used by the parties in a technical sense or a special meaning is given to them by usage,' " this use or meaning "controls judicial interpretation." (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822.)

" 'An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.' " (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263], italics omitted; *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 912.) "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Reserve Ins. Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265, italics omitted; *New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510] [In construing insurance contracts, "the entire contract is to be construed together for the purpose of giving force and effect to each clause."].) If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage. (*Bay*

*Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co., supra,* 5 Cal.4th at p. 867; *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822; *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 912.)

### 3. *Insurer's Duty to Defend*

▌ Nearly 30 years ago, in the landmark decision of *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], we held that an insurance carrier has a duty to defend when the policy is ambiguous and the insured would reasonably expect coverage based on the "nature and kind of risk covered by the policy." (*Id.* at pp. 273-275.) In the alternative, we concluded that such a duty arises when the underlying suit "*potentially* seeks damages within the coverage of the policy." (*Id.* at p. 275, italics in original; *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 299 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

### a. *Reasonable Expectations of the Insured*

In *Gray*, the insurer had refused to defend its insured in a civil action alleging assault on the ground that its policy excluded coverage for bodily injury " 'caused intentionally by or at the direction of the insured.' " (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 266, 267, 272-273.) In delineating our first basis for concluding there was a duty to defend, i.e., if the language is ambiguous, the reasonable expectations of the insured control, we invoked the familiar contract principle that the parties could have clarified "the performance of the duty to defend . . . by the language of the policy." (*Id.* at p. 272.) We found no such specificity in that case. Rather, the comprehensive personal liability policy at issue made "two wide promises: '[1.] To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and [2.] the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false, or fraudulent.' " (*Ibid.*) We concluded that "clearly these promises, without further clarification, would lead the insured reasonably to expect the insurer to defend him against suits seeking damages for bodily injury, whatever the alleged cause of the injury, whether intentional or inadvertent." (*Ibid.*) We further concluded that the language and placement of the exclusionary clause precluding coverage for damage caused " 'intentionally by or at the direction of the insured' " failed to meaningfully inform the reasonable expectations of the insured. (*Id.* at p. 273.)

We made clear, however, that the obligation to defend is not without limits. (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at pp. 274-275.) Rather, such a duty is limited by "the nature and kind *of risk covered by the policy.*" (*Id.* at p. 275, italics added.) For example, "the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from defect in a stairway." (*Id.* at p. 274; see *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra*, 41 Cal.3d at p. 906 [standard workers' compensation and employers' liability insurance policy cannot "be construed to extend coverage to an employer for tort liability incurred due to injuries to a nonemployee"]; *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 275-277, 279 [142 Cal.Rptr. 681] [policy obligating insurer to pay all sums insured shall become legally obligated to pay as damages because of bodily injury or property damage not uncertain and did not give rise to duty to defend underlying suit alleging negligent misrepresentation with regard to sale and lease of two automobiles, and breach of an implied warranty of fitness due to poor mechanical condition and actual mileage of automobiles].)

b. *Potential for Damages Within the Coverage of the Policy*

Alternatively in *Gray*, we held that there was also a duty to defend whenever the underlying action potentially sought damages covered by the indemnity provisions of the policy. (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at pp. 275, 277; *Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 299.) Thus, while the underlying complaint in *Gray* originally alleged bodily injury as a result of intentional conduct, it conceivably could have been amended to allege merely negligent conduct. (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 277.) For this reason in part, we concluded that the "complaint clearly presented the possibility that [the underlying plaintiff] might obtain damages that were covered by the indemnity provisions of the policy." (*Id.* at p. 277.)

We recognized, however, that "the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 276, fn. 15; *Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 300.) For example, in *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930 [214 Cal.Rptr. 567], a psychiatrist was prosecuted for Medi-Cal fraud and theft. (*Id.* at p. 932.) He tendered his criminal defense to Cranford, his medical malpractice insurer. (*Ibid.*) Cranford refused to defend him. (*Ibid.*) The Court of Appeal upheld the judgment of dismissal of Jaffe's subsequent complaint. (*Id.* at pp. 933, 936.) It observed

that "the duty to defend derives from the insurer's coverage obligations assumed under the insurance contract." (*Id.* at p. 934.) Thus, "where there is *no potential* for coverage, there is no duty to defend." (*Ibid.*, italics in original.)

The court reasoned, "the outcome of Jaffe's criminal case could not result in damages payable under the policy since neither imprisonment nor a fine constitutes 'damages' for insurance purposes." (*Jaffe* v. *Cranford Ins. Co.*, *supra*, 168 Cal.App.3d at p. 934.) Moreover, the policy excluded damages arising from criminal charges. (*Ibid.*) Thus, "there is no conceivable set of facts under which Cranford could be liable for the result in the criminal case." (*Ibid.*; see *Perzik* v. *St. Paul Fire & Marine Ins. Co.* (1991) 228 Cal.App.3d 1273, 1275-1278 [279 Cal.Rptr. 498] [professional liability policy which provided protection against professional liability clauses and promised to defend any suit for damages did not give rise to duty to defend grand jury proceedings and subsequent criminal action]; *State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74, 76, 77 [236 Cal.Rptr. 216] [Homeowners policy promising to pay " 'damages for which the insured is legally liable' " did "not cover any liability which might arise from the alleged *criminal action*." (Italics in original.)].)

Likewise, in *United Pacific Ins. Co.* v. *Hall* (1988) 199 Cal.App.3d 551 [245 Cal.Rptr. 99], an elementary school sustained serious fire damage. (*Id.* at p. 553.) Juvenile proceedings were instituted against the Halls' son pursuant to Welfare and Institutions Code section 602. It was ultimately determined that the minor was not responsible for the fire. (199 Cal.App.3d at p. 553) While this proceeding was pending, the school district filed a civil action for damages against the Halls. The Halls tendered defense to their homeowners' insurance company, United Pacific. The policy obligated United Pacific to defend an action for damages against the insured. (*Id.* at p. 556.) United Pacific paid for counsel to defend the civil suit, but not for his services rendered in the juvenile proceeding. (*Id.* at p. 554.) United Pacific then commenced a declaratory relief action to obtain a determination of its obligation to pay counsel for the juvenile proceeding. (*Ibid.*)

The Court of Appeal upheld summary judgment in United Pacific's favor. (*United Pacific Ins. Co.* v. *Hall, supra*, 199 Cal.App.3d at pp. 554, 557.) The court concluded that "Where the language of an insurance policy plainly obligates an insurer to defend an action for damages against the insured, the insurer has no obligation to defend an insured in criminal or administrative proceedings where damages are not sought." (*Id.* at p. 556, italics deleted.) "The obligation to defend, which is co-extensive with coverage under the

policy, is plainly limited to actions seeking damages. Since the juvenile proceeding sought no damages from the Halls, United Pacific had no obligation to furnish them with counsel in that proceeding." (*Ibid.*)

Finally in *Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102 [234 Cal.Rptr. 853], the issue was whether "an insurance policy which promises to reimburse an insured physician for his expense and loss of earned income 'for each day the insured is required to attend *the trial of a civil suit for damages against the insured* alleged to have been caused by malpractice' provide[s] such coverage for a hearing before the Board of Medical Quality Assurance" which the insured was required to attend. (*Id.* at pp. 1104-1105, italics in original.) The Board of Medical Quality Assurance accusation charged the physician with gross negligence, incompetence in the practice of medicine, and acts of moral turpitude, dishonesty, and corruption. (*Id.* at p. 1108.) The Court of Appeal reversed the judgment against the insurer, concluding that such a hearing was not a " 'trial of a civil suit for damages against the insured.' " (*Id.* at p. 1110; see also *id.* at pp. 1105, 1112; cf. *Bank of the West* v. *Superior Court*, *supra*, 2 Cal.4th at pp. 1258, 1265-1266 [comprehensive general liability insurance policy that applied to "damages" the insured must pay for injury arising out of "unfair competition" occurring in the course of the insured's "advertising activities" did not cover claims for advertising injury that arose under the Unfair Business Practices Act since damages are not available under this statutory scheme].)

## B. *Application of Principles to Industrial's Policy*

### 1. *Reasonable Expectations of the Insured*

La Jolla asserts that it reasonably expected that its workers' compensation insurer would defend it from a superior court action filed by an employee alleging claims potentially compensable under the Workers' Compensation Act. As noted earlier, part 1 of the policy in this case provides in pertinent part, "We will pay promptly when due the benefits required of you by the workers compensation law. . . . We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. [¶] We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."

In *Gray*, we held that an insurance carrier has a duty to defend when the policy is ambiguous and the insured would reasonably expect such coverage based on the "nature and kind of risk covered by the policy." (*Gray* v. *Zurich*

*Insurance Co., supra,* 65 Cal.2d at pp. 273-275; *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 299.) To the extent that, by focusing on its reasonable expectations, La Jolla argues that the part 1 policy language is ambiguous, we disagree. Given the statutory definition of compensation, which expressly *includes* the payment of benefits, and the corresponding definition of damages, which expressly *excludes* compensation, the policy's language is susceptible of no other objective construction than providing coverage solely for workers' compensation benefits, or claims, proceedings, or suits for such benefits, and not for civil suits for damages. (Lab. Code, §§ 3207, 3209; Ins. Code, § 11630.) Thus, contrary to the Court of Appeal's conclusion, an express exclusion of civil suits for damages was unnecessary.

Moreover, " 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265, italics omitted.) Here, the "instrument as a whole" contained two parts, the workers' compensation insurance and the employers' liability insurance. The employer's liability policy afforded coverage for "all sums you legally must pay as *damages* because of bodily injury to your employees," and promised to defend "any claim, proceeding or suit against you for *damages* payable by this insurance." It excluded "damages arising out of the *discharge* of, coercion of, or *discrimination against* any employee in violation of law," and "any obligation imposed by a workers compensation . . . law."

As noted above, employer's liability policies operate as "gap-fillers," providing "protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 916.) "Generally, these two kinds of coverage are mutually exclusive." (*Ibid.*) Thus, if any part of the policy would provide La Jolla with defense and indemnification of Saleh's action, it is, absent any applicable exclusions, the employer's liability, not the workers' compensation portion. Construing the workers' compensation portion to also include the duty to defend any claim asserted by an employee, including civil suits for damages, renders the employer's liability section superfluous. We do not believe this result is what the parties reasonably intended or expected.

La Jolla asserts, however, that an expectation of coverage under part 1 is "justified where the policy clearly and broadly provides that a workers' compensation insurer . . . will defend *any* claim or suit." However, the policy in this case does not require Industrial to defend La Jolla in *any* proceeding. Rather, by its express language, the policy requires Industrial to

defend La Jolla in "any claim, proceeding or suit . . . for *benefits payable by this insurance.*" (See *Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265, italics in original ["policy does not purport to cover 'unfair competition' in the abstract; instead, it covers *'damages'* for 'advertising injury' caused by 'unfair competition' "].)

La Jolla also asserts that "It is vitally important to assure the seamless insurance protection that California businesses expect through their subscription to, and substantial premium payment for, Comprehensive General Liability . . . and workers' compensation insurance policies." There is, however, no evidence that La Jolla expected "seamless insurance protection" when it purchased the workers' compensation portion of its policy. In fact, the limitations of part 1 apparently induced La Jolla to purchase part 2, or the employers' liability coverage, as a "gap-filler" with the expectation that the workers' compensation provisions would not provide coverage for every claim, and in particular would not provide coverage for "any claim, proceeding or suit against [La Jolla] for damages." (Pt. 2, par. D.)

### 2. *Potential for Damages Within the Coverage of the Policy*

In the alternative, we have held that a duty to defend arises when the suit *"potentially* seeks damages within the coverage of the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 275, italics in original; *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 299.) We recognized, however, that "the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 276, fn. 15.)

No such potential existed in this case. Regardless of the merit of the claims alleged in Saleh's complaint, the superior court never had jurisdiction to award workers' compensation benefits. Rather, the award of such benefits is within the exclusive jurisdiction of the WCAB. (Lab. Code, § 5300.) Thus, a civil suit for damages is no more a claim for workers' compensation benefits than a criminal or disciplinary action is a civil suit for damages. (See *Perzik* v. *St. Paul Fire & Marine Ins. Co., supra,* 228 Cal.App.3d at pp. 1276-1278; *United Pacific Ins. Co.* v. *Hall, supra,* 199 Cal.App.3d at p. 556; *Hackethal* v. *National Casualty Co., supra,* 189 Cal.App.3d at p. 1110; *Jaffe* v. *Cranford Ins. Co., supra,* 168 Cal.App.3d at p. 934.)

La Jolla argues that such potential did exist in this case because the civil suit provided the opportunity to "resolve virtually all of the factual preconditions to entitlement to workers' compensation benefits." Nothing in *Gray* or its progeny, however, suggests that the duty to defend one action is triggered by the prospect that the insured may face a claim for materially

different relief in some other action brought in a distinctly different forum, merely because the two actions are premised on similar factual allegations. Indeed, such a rule would render the duty to defend virtually unlimited. There is always some possibility that facts alleged in one forum could, in the future, form the basis for a covered claim in a different action. Were this the test, however, *any* judicial or administrative action involving an employer-employee relationship could be characterized as a "predecessor" claim for workers' compensation benefits. Workers' compensation insurers would thus be required to defend employers in criminal prosecutions because the alleged acts may have resulted in harm to their employees, in Equal Employment Opportunity Commission investigations because that agency has the authority to issue "right to sue" letters, and in grand jury proceedings due to that body's power to recommend the filing of civil actions, which could then, conceivably, lead to the filing of a workers' compensation claim.

██ Rather, the test is whether the *underlying action for which defense and indemnity is sought* potentially seeks relief within the coverage of the policy. (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 843 [not clear as a matter of law that all of the relief for which insured "potentially liable in the underlying suits" cannot be deemed covered]; *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 302 ["underlying suit" sought "damages of the nature and kind covered by the policy"]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 276 ["instant action presented the potentiality of" covered judgment].) ██ Thus, the Court of Appeal fundamentally misconstrued the kind of potential coverage that gives rise to a duty to defend when it concluded that Industrial had a duty to defend the civil action merely because Saleh might, at some indeterminate time in the future, file a workers' compensation claim that did fall within Industrial's coverage.

Likewise, we reject La Jolla's argument that "The employer faces the risk that any settlement of the civil suit will include payment of the workers' compensation loss." It may be that some employers will elect to foreclose any possibility of a subsequent workers' compensation claim by including such claims within the terms of their individual settlement. Such an agreement between the employer and ex-employee does not, however, modify the terms of the insurance contract, or create a duty to defend the civil action on the part of the workers' compensation insurer.

Relying on *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d 807, La Jolla also asserts that any reliance on the statutory distinction between "compensation," and thereby benefits, and "damages," "fashions a strained, technical reading of the Policy." Not so.

The issue in *AIU* was whether the phrase "legally obligated" to pay as "damages" (or "ultimate net loss") incurred because of "property damage" in

a comprehensive general liability (CGL) policy encompassed the insured's liability under the Comprehensive and Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 et seq.) and other federal and state laws for environmental response costs and injunctive relief which were arguably equitable in nature. (*AIU Ins. Co.* v. *Superior Court*, *supra*, 51 Cal.3d at pp. 814, 815, 824.) We concluded that such costs and relief, to the extent they were not prophylactic in nature, were "damages" incurred "because of property damage" and were therefore covered. (*Id.* at p. 843.)

First, we declined to interpret the phrase "legally obligated" as providing coverage for only those actions traditionally brought at law and not in equity. (*AIU Ins. Co.* v. *Superior Court*, *supra*, 51 Cal.3d at pp. 824-825.) We observed that because the distinction between law and equity in California had generally been abolished, "even a legally sophisticated policyholder might not anticipate that the term 'legally obligated' precludes coverage of equitably compelled expenses." (*Id.* at p. 825.) "Thus, as a matter of plain meaning, the term 'legally obligated' cover[ed] injunctive relief and recovery of response costs." (*Ibid.*) Moreover, even if the phrase raised doubts about whether a law-equity distinction was intended, it would be unreasonable to conclude that it unambiguously incorporated this sophisticated distinction into the policies. Thus, any ambiguity was resolved in favor of coverage. (*Ibid.*)

Second, we determined whether the various forms of relief sought were damages, and as relevant to La Jolla's argument here, concluded that reimbursement of government response costs was covered under the CGL "damages" provision. (*AIU Ins. Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 830.) In particular, we rejected the argument that "because CERCLA distinguishes response costs from damages, it mandates the same distinction in the insurance context because the agencies [did] not seek 'damages' as prescribed by statute." (*Ibid.*) Contrary to AIU's assertion, we did not interpret CERCLA as intending that reimbursement of response costs be treated as conceptually distinct from recovery of damages. (*Id.* at pp. 830-831.) More significantly, we determined we were "not bound by distinctions or definitions contained in CERCLA itself, if such distinctions do not reflect the intent of the parties to the CGL policies at the time of their formation." (*Id.* at p. 831.) We noted, "The parties' intent in entering the CGL policies could not possibly have been influenced by the niceties of statutory language adopted many years after the policies were drafted." (*Ibid.*)

The application of these factors to this case compels a contrary result. Here, unlike law and equity courts, the jurisdiction of the WCAB and the superior court has always been and remains distinct. Moreover, the workers'

compensation statutes expressly contrast the terms "compensation" and "damages." (Lab. Code, §§ 3207, 3209.) Unlike CERCLA, which was not enacted until after the policies in *AIU* were drafted, this distinction long preceded the policy here, and is reflected on the face of the parties' contract, which contains mutually exclusive parts for workers' compensation "benefits" and the employer's liability for "damages" in civil suits.

Finally, La Jolla asserts that a failure to find a duty to defend on the part of Industrial under part 1 "effectively eviscerates the decisions of this Court, beginning with *Shoemaker* . . . and its progeny, holding that such claims are compensable exclusively in the workers' compensation jurisdiction." It does not. If anything, these decisions clarifying which claims fall within the WCAB's jurisdiction, and which do not, support our conclusion that the civil and workers' compensation systems are distinct, and therefore a workers' compensation insurer which promises to pay claims for benefits does not have a duty to defend civil actions seeking damages.

## CONCLUSION

We conclude that the policy language in part 1 is not ambiguous, and does not provide coverage for, and hence does not give rise to a duty to defend, an employee's civil suit for damages. We further conclude that a civil suit for damages does not present a potentiality of a judgment within the indemnity provisions of the policy because workers' compensation benefits can never be awarded in a civil suit.[4] (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at pp. 275, 277; *Scott* v. *Industrial Acc. Com.*, *supra*, 46 Cal.2d at p. 83.)[5]

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Kennard, J., Baxter, J., George, J., and Werdegar, J., concurred.

On March 2, 1995, the opinion was modified to read as printed above.

---

[4] To the extent *Wong* v. *State Compensation Ins. Fund*, *supra*, 12 Cal.App.4th 686, is inconsistent with this conclusion, it is hereby disapproved.

[5] In light of our conclusion, we need not reach Industrial's further claims that it did not have a duty to defend La Jolla because Saleh's claims alleging racial discrimination and wrongful termination did not fall within the exclusive jurisdiction of the Workers' Compensation Act.

Industrial's request for judicial notice of a motion for summary judgment in an unrelated action is hereby denied. (See *Mangini* v. *R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1065 [31 Cal.Rptr.2d 358, 875 P.2d 73].).