**GENERAL STAR INDEMNITY COMPANY, a Connecticut Corporation, Plaintiff,**

v.

**SCHOOLS EXCESS LIABILITY FUND, et al., Defendants.**

No. C–94–1822 WHO.

United States District Court, N.D. California.

March 21, 1995.

John R. Lisenbery, Alan Barbanel, Quisenberry & Barbanel, Los Angeles, CA, for plaintiff.

Justice C. McPherson, Ropers, Majeski, Kohn & Bentley, Redwood City, CA, for defendant Employers Reinsurance Co.

Robert A. Cutbirth, Davidovitz & Yaron, San Francisco, CA, for defendant Schools Excess Liability Fund.

## OPINION AND ORDER

ORRICK, District Judge.

Defendants Schools Excess Liability Fund's and Employers Reinsurance Corporation's motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure having come before the Court, and the Court, having considered the pleadings and having had the benefit of oral argument of counsel, grants the motions to dismiss.

### I.

General Star Indemnity Company ("General Star") brings this action for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, indemnity, and contribution against Schools Excess Liability Fund ("SELF") and Employers Reinsurance Corporation ("Employers"). The action was brought for the purpose of determining rights and duties con-

cerning written contracts of insurance and insurance coverage. General Star seeks $300,000 in defense fees and $400,000 for indemnity payments, exclusive of interest and costs, arising from a suit brought against the Berkeley Unified School District ("BUSD").

General Star serves as a general commercial liability insurer to BUSD. SELF provided excess workers' compensation and employers liability coverage to BUSD. (*See* First Am.Compl., filed Sept. 12, 1994, Ex. B.) The SELF policy provided up to $10,000,000 in coverage, subject to and in excess of a $250,000 retained limit for each occurrence. Employers also provided an excess workers' compensation and employers liability policy for BUSD. (*Id.*, Ex. C.)

### Background of the Underlying Action

On or about June 12, 1992, Patricia H., Jackie H. and Rebecca H. filed *Patricia H. v. Berkeley Unified School District,* No. C–92–2337 WHO, alleging constitutional violations, civil rights violations, and pendent state law claims against BUSD and certain BUSD employees. The central allegations in the complaint alleged that Charles Ray Hamilton ("Hamilton"), a BUSD teacher, molested Jackie H. and Rebecca H. while he was dating their mother, Patricia H. Patricia H., like Hamilton, was an employee of BUSD.

The complaint included a 42 U.S.C. § 1983 cause of action on behalf of Patricia H., alleging that her supervisor, Anton Jungherr ("Jungherr"), Associate Superintendent for Business Services for BUSD, deprived her of her rights as secured by the Constitution of the United States, including the First Amendment. Specifically, she alleged that Jungherr engaged in a course of conduct intended to humiliate, harass, and intimidate her for the purpose of undermining her attempts to obtain relief for the injuries inflicted on her children by Hamilton. She further alleged that as a result of Jungherr's conduct, on September 9, 1991, she was unable to continue working and filed a workers' compensation claim for stress-related on-the-job injury. (*See* First Am.Compl., Ex. D ¶ 38.)

On April 15, 1992, BUSD tendered its defense and indemnity in the *Patricia H.* action to General Star. After issuing a preliminary denial of coverage on January 28, 1993, General Star agreed to provide a defense to BUSD under its policy, subject to a reservation of rights. On February 22, 1994, BUSD tendered its defense and indemnity in *Patricia H.* to SELF. SELF declined defense and indemnity on the grounds that its memorandum of coverage did not provide for defense in a civil action.

*Patricia H.* was settled on July 28, 1994. Plaintiffs were paid in excess of $800,000 by General Star, National Union Fire Insurance Company, and BUSD collectively. In connection with the settlement, BUSD has assigned to General Star all assignable claims that it has against SELF and Employers. General Star is pursuing these claims in this action.

The issue now before the Court is whether General Star's first amended complaint ("complaint") states a claim upon which relief can be granted.

### II.

#### A.

█ A motion to dismiss under Rule 12(b)(6) should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn therefrom. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

█ In order to properly rule on this motion to dismiss, the Court must apply California law in interpreting the insurance contracts between BUSD and SELF and BUSD and Employers. Although insurance contracts often have special features, ordinary rules of contract interpretation still apply. *Bank of the West v. Superior Court,* 10 Cal. Rptr.2d 538, 544–45, 2 Cal.4th 1254, 1264, 833 P.2d 545, 551 (1992). The court must interpret the contracts to give effect to the mutual intent of the parties. Cal.Civ.Code § 1636

(Deering 1994). The written language of the contract governs if it is clear and explicit. Cal.Civ.Code § 1638. If the insurance policy is ambiguous and

> an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*, 36 Cal.Rptr.2d 100, 105, 9 Cal.4th 27, 37, 884 P.2d 1048, 1053 (1994) (citations omitted).

### B.

In its complaint, General Star asks that the Court declare that SELF and Employers each had a duty to defend and indemnify BUSD for the *Patricia H.* claim. Because an insurance company's duty to defend is much broader than the duty to indemnify, the Court will first address whether a duty to defend arose under either policy.

■ The California Supreme Court has defined the contours of the duty to defend in *Gray v. Zurich Insurance Co.*, 54 Cal.Rptr. 104, 65 Cal.2d 263, 419 P.2d 168 (1966). The court held that the duty to defend could arise in one of two ways: (1) when the policy language is ambiguous and the insured has a reasonable expectation of coverage based on the "nature and kind of risk covered by the policy," *Id.* at 111, 65 Cal.2d at 273–75, 419 P.2d at 175; or (2) when the underlying action potentially sought damages covered by the indemnity provisions of the policy. *Id.* at 112, 65 Cal.2d at 275, 277, 419 P.2d at 176.

■ Further, the *Gray* court held that the duty to defend "should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources." 54 Cal.Rptr. at 113, 65 Cal.2d at 276, 419 P.2d at 177. Additionally, the insurer must defend the entire action, even if only one claim is potentially covered by the insurance. *Devin v. United Servs. Auto Ass'n*, 8 Cal.Rptr.2d 263, 268, 6 Cal.App.4th 1149, 1157 (1992). However, "the insurer's obligation is not un-

limited; the duty to defend is measured by the nature and kinds of risks covered by the policy." *Insurance Co. of the West v. Haralambos Beverage Co.*, 241 Cal.Rptr. 427, 430, 195 Cal.App.3d 1308, 1316 (1987) (quoting *Giddings v. Industrial Indem. Co.*, 169 Cal. Rptr. 278, 280, 112 Cal.App.3d 213, 218 (1981)). The burden is on the insured initially to prove that the claim is within the basic scope of coverage. *Royal Globe Ins. Co. v. Whitaker*, 226 Cal.Rptr. 435, 437, 181 Cal. App.3d 532, 536 (1986).

### C.

SELF and Employers each provided BUSD with two different types of insurance—workers' compensation insurance, and employers liability insurance. Under workers' compensation insurance, the insurer "agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled." *La Jolla Beach*, 36 Cal.Rptr.2d at 104, 9 Cal.4th at 36, 884 P.2d at 1052 (quoting 1 Cal. Liability Insurance Practice: Claims and Litigation § 1.28 (1994)). Employers liability insurance, on the other hand, "protects employers against lawsuits by employees who are injured in the course of employment, but whose injuries are not compensable under the workers' compensation laws." *Id.* (quoting 1 Cal. Liability Insurance Practice § 1.28 at 1–22). Generally, it also indemnifies employers against civil suits by employees. *Id.* Because these two types of insurance cover different risks, the Court will evaluate independently whether the duty to defend arose under either type of coverage.

### 1.

■ The workers' compensation portion of the SELF policy provides indemnity for

A.  . . . loss as a qualified self-insurer under the "Workers' Compensation Law" in excess of the "covered party's" retention stated in the Declarations but not for more than the limit of indemnity stated in the Declarations.

B.  Loss means amounts actually paid by the "covered party" as a self-insurer under the "Worker's Compensation

Law" for bodily injury by accident or bodily injury by disease. . . .

(First Am.Compl., Ex. B at 73.) Similarly, Employers workers' compensation policy applies to

loss paid by [BUSD] because of liability imposed on [BUSD] by the workers compensation law of any state named. . . . LIABILITY MUST RESULT FROM BODILY INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE NAMED IN SCHEDULE ITEM 3.

(*Id.*, Ex. C at 88.) "Loss" under the policy includes amounts paid in settlement of a workers' compensation claim, amount paid in satisfaction for a judgment of such claim, and court costs and legal expenses pertaining to such claims. (*Id.* at 89.)

General Star argues that these workers' compensation policies that, by their plain terms, only apply to workers' compensation proceedings, create a duty to defend the *Patricia H.* action. Its argument is premised on *Wong v. State Compensation Insurance Fund,* 16 Cal.Rptr.2d 1, 12 Cal.App.4th 686 (1993). In *Wong,* the plaintiff brought an action against its workers' compensation insurance carrier for failure to defend a civil suit brought in state court. In the underlying claim, an employee of Wong filed a constructive wrongful termination suit in superior court. In his deposition, the employee testified that stress, an unacceptable pay rate, and intolerable working conditions were the sole reasons he left Wong. The superior court dismissed Wong's action, finding that defense of a civil suit such as the one brought by the employee here was not covered by the insurance policy. *Id.* at 3–4, 12 Cal.App.4th at 693.

The appellate court reversed. It found that the injuries complained of by the employee arose out of conduct by Wong that would normally occur in the workplace, and as such, the employee's injuries necessarily arose out of the employment relationship. *Id.* at 6, 12 Cal.App.4th at 695. Because workers' compensation was the sole and exclusive remedy for the employee, the allegations underlying the case established the in-

surance company's "potential" liability. *Id.* This "potential" liability triggered the duty to defend.

General Star argues that, as in *Wong,* the *Patricia H.* claim triggered a duty to defend because Patricia H. suffered emotional distress as a result of the actions taken against her by BUSD. It argues that the fact that Patricia H.'s claim is framed as a violation of § 1983 does not alter the analysis. BUSD has denied discriminating against Patricia H. If a court were to find that it did not discriminate, it argues, she would be able to pursue her emotional distress claim under workers' compensation law. In other words, General Star advances a theory that would require a workers' compensation insurance carrier to defend any discrimination suit where the employee also alleges emotional distress.

Subsequent to the filing of General Star's opposition, the Supreme Court of California disapproved *Wong* in *La Jolla Beach.* 36 Cal.Rptr.2d at 111 n. 4, 9 Cal.4th at 46 n. 4, 884 P.2d at 1059. The question before the court was whether the workers' compensation portion of the insurance carrier's policy provided coverage for the claims in an employee's complaint where the employee alleged that he was discharged in violation of public policy, thus giving rise to a duty to defend those claims. *Id.* at 101, 9 Cal.4th at 31, 884 P.2d at 1049. The lower court had found that the insurance company had a duty to defend, because if the employer were able to establish that the employee was not terminated in violation of public policy, the employee would still have a claim for emotional distress under the workers' compensation law. This argument is nearly identical to that made by General Star.

The Supreme Court of California reversed the lower court. It held that "the civil and workers' compensation systems are distinct, and therefore a workers' compensation insurer which promises to pay claims for benefits does not have a duty to defend civil actions seeking damages." *Id.* at 111, 9 Cal.4th at 46, 884 P.2d at 1059.

Under the principles of *La Jolla Beach,* neither SELF nor Employers had a duty to defend under the workers' compensation por-

tions of their policies. The language of the policies is clear that they cover damages incurred because of a workers' compensation action, not damages resulting from a civil suit. This conclusion is further supported by the fact that Patricia H. has brought a parallel claim in the workers' compensation system based on the treatment she received at the hands of her BUSD supervisor. (*See* General Star Opp'n, filed Nov. 3, 1994, at 3:13–15.) It is appropriate for SELF and Employers to pay for damages resulting from that claim, subject to the provisions of the policies. It would be unjust to require them to pay for the *Patricia H.* civil suit as well. Nor was either defendant required to indemnify BUSD because, as discussed above, the duty to indemnify is narrower than the duty to defend.

### 2.

The fact that neither SELF nor Employers incurred a duty to defend under the workers' compensation portions of their policies, however, does not end the inquiry. Both policies contained employers liability insurance.

> [E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 226 Cal.Rptr. 558, 565, 41 Cal.3d 903, 916, 718 P.2d 920, 927 (1986). There is no dispute that the employers liability portions of the policies generally cover civil claims.

■ SELF and Employers argue, however, that coverage for the *Patricia H.* civil suit is excluded under the plain terms of the policies. First, they argue that Patricia H. did not allege that she suffered from a bodily injury by accident or disease such that the provisions of the policies apply. Second, both policies specifically exclude coverage for injuries resulting from coercion or discrimination of employees.

The SELF employers liability policy states that it will indemnify for "loss" in excess of the covered party's retention. The policy defines "loss" as follows:

> C. Loss means amounts which the "covered party" legally and actually paid in cash as damages, because of bodily injury by accident or bodily injury by disease....

(First Am.Compl., Ex. B. at 74.) Similarly, Employers requires that

> DAMAGES MUST RESULT FROM BODILY INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE NAMED IN SCHEDULE ITEM 3.

(*Id.*, Ex. C at 90 ¶ A.)

Employers and SELF attack General Star's claim that they had a duty to defend the Patricia H. suit on two fronts. First, they argue that the emotional distress alleged by Patricia H. is not "bodily injury." Second, they argue that any injury she suffered did not result from an accident or a disease.

■ The parties appear to agree that "bodily injury" is generally limited to "physical injury, sickness or disease and their consequences." *See, e.g., Aim Ins. Co. v. Culcasi*, 280 Cal.Rptr. 766, 775, 229 Cal.App.3d 209, 224 (1991); *Chatton v. National Union Fire Ins. Co.*, 13 Cal.Rptr.2d 318, 323, 10 Cal.App.4th 846, 854 (1992). It does not encompass nonphysical, emotional or mental harm. *McLaughlin v. National Union Fire Ins. Co.*, 29 Cal.Rptr.2d 559, 569, 23 Cal. App.4th 1132, 1150–51 (1994). Physical injury resulting from emotional distress, however, constitutes "bodily injury." *Aim Ins.*, 280 Cal.Rptr. at 775, 229 Cal.App.3d at 224.

Defendants argue that Patricia H. alleged only that she suffered from emotional distress as a result of the conduct by BUSD officials. Specifically, she alleged that

> [a]s a proximate result of the Defendants' actions as alleged herein, Plaintiffs were humiliated, hurt and injured in their health, strength and activity, sustaining injuries to their nervous system and person, and have suffered and will continue to

suffer in the future, severe mental anguish and emotional distress.

(First Am.Compl., Ex. D at ¶ 41.) General Star correctly argues that this allegation can be construed to encompass "bodily injury." Therefore, the Court must go on to consider whether this bodily injury was caused by an accident.

■ As discussed above, both policies require that losses due to bodily injury will be covered only if they are caused by "accident."[1] The Court must keep in mind that

> [o]ne who purchases an insurance policy against liability for [bodily injury or] property damages due to accident cannot reasonably expect to obtain coverage for consequences clearly outside the scope of the definition of accident.

*Hogan v. Midland National Ins. Co.,* 91 Cal.Rptr. 153, 157, 3 Cal.3d 553, 561, 476 P.2d 825 (1970).

■ Defendants correctly argue that the actions taken by BUSD to harm Patricia H. do not come within the definition of accident. Patricia H. alleged that BUSD intentionally took adverse action against her in violation of § 1983. An intentional act is not an accident. *Dyer v. Northbrook Property & Casualty Ins. Co.,* 259 Cal.Rptr. 298, 303, 210 Cal. App.3d 1540, 1547 (1989). Further, the intentional application of an employment policy is not an accident, even if such application has an unintended effect. *Loyola Marymount Univ. v. Hartford Accident & Indem. Co.,* 271 Cal.Rptr. 528, 532, 219 Cal.App.3d 1217, 1225 (1990). In other words, even if BUSD did not mean to harm Patricia H., the fact that it intended to take certain actions against her means that there was no "accident" such that either SELF or Employers had a duty to defend.

■ Even if Patricia H. had made allegations falling within the definition of "accident," neither defendant incurred a duty to defend, because both policies exclude damages arising out of the coercion of or discrimination against an employee. The SELF employers liability coverage excludes:

> 6. damages arising out of the "covered party's" violation of law in the discharge of, coercion of, or discrimination against any employee[.]

(First Am.Compl., Ex. B at 75 ¶ F.) Similarly, Employers' employers liability coverage excludes:

> 8. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

(*Id.,* Ex. C at 87.)

In the Court's view, the clear and explicit language of the policies lead to the unavoidable result that neither SELF nor Employers incurred a duty to defend the *Patricia H.* suit. Patricia H.'s claim was based on a violation of § 1983. She alleged that her supervisor intentionally attempted to deprive her of her rights, privileges and immunities secured by the Constitution, including but not limited to her First Amendment rights. (*Id.,* Ex. D at ¶ 56.) Such intentional discriminatory and coercive conduct is excluded from coverage under the plain terms of the policies. Therefore, neither SELF nor Employers had a duty to defend under the employers liability portions of the policies.

### D.

■ Because the Court has concluded that neither SELF nor Employers had a duty to defend or indemnify BUSD under either the workers' compensation or the employers liability portions of their policies, General Star's complaint fails to state a claim upon which relief can be granted. It is not entitled to the declaratory relief it seeks. As a necessary corollary, General Star's breach of contract and breach of the implied covenant of good faith and fair dealing causes of action must also fail. Therefore, the complaint must be dismissed pursuant to Rule 12(b)(6).

---

1. Nowhere does General Star allege that the harm suffered by Patricia H. was the result of a "disease."

The question remains, however, whether General Star is entitled to amend the complaint. The Court must allow such amendment unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

General Star argues that many factual questions remain that preclude dismissal of this action with prejudice. It correctly points out that the duty to defend is measured by facts contained in the complaint along with facts learned from any source that create the potential of liability under the policy. *CNA Casualty of Cal. v. Seaboard Surety Co.*, 222 Cal.Rptr. 276, 279, 176 Cal. App.3d 598, 606 (1986). It argues that these defendants' obligation can only be determined based upon disclosure of the "facts" reasonably available at the time of the tender of the claim, and this cannot be determined as a matter of law. It requests that the Court allow it to amend the complaint.

Rather than pointing the Court to facts the other insurers knew that could have created a duty to defend, General Star merely speculates that the duty to defend could have arisen, because at trial Patricia H. could have prevailed on a "lesser included offense." The insured, however, "may not speculate about unpled third party claims to manufacture coverage." *Hurley Constr. Co. v. State Farm Fire & Casualty Co.*, 12 Cal.Rptr.2d 629, 631, 10 Cal.App.4th 533, 538 (1992). As a result, the complaint must be dismissed without leave to amend.

### E.

In short, this Court is "unwilling to characterize the straightforward provisions of the polic[ies] to find coverage where none exists." *Id.* 12 Cal.Rptr.2d at 632. Further, there was no duty to defend because "the insure[rs'] obligation is not unlimited; the duty to defend is measured by the nature and kinds of risks covered by the polic[ies]." *Insurance Co. of the West*, 241 Cal.Rptr. at 430, 195 Cal.App.3d at 1316. Because the *Patricia H.* suit does not fall within the risks covered by the policies, the motions to dismiss are granted.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Defendant SELF's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

2. Defendant Employers' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

3. This action is dismissed with prejudice.