**REAUD, MORGAN & QUINN, INC., Plaintiffs,**

v.

**OLD REPUBLIC INSURANCE CO., Defendant.**

**Civil Action No. 1:99CV806.**

United States District Court, E.D. Texas, Beaumont Division.

March 20, 2001.

George Michael Jamail, Reaud Law Firm, Beaumont, TX, for plaintiff.

Paul W. Gertz, Lawrence Louis Germer, Beaumont, TX, Philip R. King, Meckler Bulger & Tilson, Chicago, IL, for defendant.

COBB, District Judge.

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Partial Summary Judgment [13] and Defendant's Cross–Motion for Summary Judgment [18], and the Court having reviewed the motions and responses on file is of the opinion that the Plaintiff's Motion for Partial Summary Judgment be GRANTED as to determination of liability and the Defendant's Cross–Motion for Summary Judgment be DENIED.

## I. Background.

In this lawsuit, law firm Reaud, Morgan and Quinn, Inc., ("RMQ") seeks recovery from its malpractice insurance carrier, Old Republic Insurance Co. ("Old Republic") for the cost of defending itself in various proceedings stemming from an underlying malpractice suit against RMQ by former clients, the Welches. That malpractice suit was styled *Joe and Marylyn Welch v. Reaud, Morgan and Quinn, Inc. ("Welch v. RMQ")*.

Between 1994 and 1998, RMQ represented Mr. Joe Welch in a workers' compensation action, *Joe Welch v. Glenda Matouse*, against Mobil Oil Corporation and its workers' compensation insurers (the "Mobil defendants"). RMQ developed a large file of discovery and other materials regarding the allegations against the Mobil defendants. That case ended in settlement. RMQ concurrently represented a class action in another workers' compensation case against the Mobil defendants. That case, *Jerry McClelland, et. al., v.*

*Robert Gronwaldt, et. al. ("McClelland")*, is ongoing with some of the same claims and legal theories as in *Welch v. Matouse*. One lawyer who worked on both the *Welch* and *McClelland* workers' compensation cases was Mr. Alto Watson, III. Mr. Watson was under contract with RMQ at that time.

In early 1999, over a year after RMQ's representation of Mr. Welch's claim ended, Mr. and Mrs. Welch retained Gilbert T. Adams, Jr., of the Gilbert T. Adams law firm on an unrelated matter. Mr. Adams determined that the Welches would benefit from obtaining RMQ's file of material relating to Mr. Welch's workers' compensation claim. On March 24, 1999, the Adams law firm sent a letter to RMQ requesting that RMQ turn over the original documents in the Welch file to the Adams firm on behalf of the Welches. This letter was followed by several other, similar demands orchestrated by Mr. Adams and Mr. Watson (who was then working in conjunction with the Adams firm instead of with RMQ). On the basis that much of that material was essential to its ongoing representation in *McClelland* and that some of the material was under a protective order relating to both the *Welch v. Matouse* and the *McClelland* workers' compensation cases, RMQ refused.

Mr. and Mrs. Welch sued RMQ on various issues of malpractice in *Welch v. RMQ.*, which was filed by separate counsel Charles Herring, Jr. Apparently, there was no discovery conducted in that action and little in terms of motions hearings or other court proceedings. The Welches, acting through combinations of counsel, used various motions in the ongoing *McClelland* litigation to try, *inter alia,* to disqualify RMQ from acting as class counsel and obtain discovery of the identical

materials sought in the *Welch v. RMQ* action.

Additionally, Mr. Herring represented Mr. Watson during proceedings to revoke Mr. Watson's license to practice law for various ethical violations. Although the revocation proceedings did not have any direct connection with the Welch–RMQ controversy, Mr. Herring sought discovery of, again, the same materials from RMQ.

RMQ hired separate counsel, Mr. Morgan Copeland, Jr., of Vinson & Elkins, L.L.P., to represent itself against the Welches' action. It did so under the provisions of its malpractice insurance provided by its carrier, Old Republic. Mr. Copeland ultimately defended these identical attempts in *Welch v. RMQ*, in the *McClelland* suit and in the Watson revocation proceeding. In the *McClelland* case, Mr. Copeland also took affirmative actions, such as pursuing a motion for a protective order benefitting RMQ, in connection with RMQ's defense. He did not participate as class counsel in *McClelland* nor did he have any other role in the Watson proceedings.

RMQ submitted claims to Old Republic under its insurance policy for coverage. Old Republic rejected the claims for any professional services rendered in connection with the *McClelland* and Watson cases on the basis that those actions were separate and distinct from *Welch v. RMQ* and not covered under its policy. RMQ sued Old Republic in November 1999. Old Republic removed the action to federal court by reason of diversity. Each of the parties now seek summary judgment.

## II. The Standard on Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Col., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is unnecessary for the movant to negate elements of the non-movant's case. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–6, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (1986); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

This Court will thus proceed, based on the parties' pleadings, affidavits, and other filings.

## III. Analysis.

### A. The Malpractice Insurance Policy.

RMQ and Old Republic entered into a Lawyers Professional Liability Insurance Policy, number CUG25204, for the period July 29, 1998 through July 29, 1999. The policy included an aggregate limit of $10 million with a per-claim deductible of $25,000. Under its terms, reproduced in the parties' pleadings, Old Republic assumed the duty to defend any claim seeking damages against RMQ to which the policy applied. Such duty included the selection of defense counsel and the payment of defense costs, defined as the fees charged by an attorney designated by Old Republic and other expenses resulting from the action if incurred by Old Republic or by RMQ with the consent of Old Republic.

The *Welch v. RMQ* action sought declaratory and injunctive relief, attorney's fees and costs, and actual and exemplary damages with interest. Old Republic approved hiring Mr. Copeland, as evidenced by its paying Mr. Copeland's fees for the work he accomplished in *Welch v. RMQ* alone.

Therefore, the requirements of the policy contract were met and Old Republic was under a duty to defend (or indemnify for the defense of) RMQ in the malpractice against it by the Welches. Old Republic agrees that it did so. The remaining controversy is whether Mr. Copeland's representation in *McClelland* and the Watson hearings falls within the defense of *Welch v. RMQ*.

### B. The Eight Corners Rule and Damages.

█ Old Republic asserts that the *McClelland* case and the Watson revocation hearings must be analyzed under the Texas "Eight Corners Rule" to determine whether its policy covers them. Such eligibility is determined by comparing the four corners of the respective pleadings to the four corners of the governing policy. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997).

█ Old Republic denies liability for the *McClelland* and Watson cases because no claim for damages against RMQ is presented within the four corners of the pleadings or other court papers in those cases. Further, Old Republic exhorts this Court to treat *Welch v. RMQ*, the *McClelland* lawsuit and the Watson proceedings separately and not to look beyond the eight corners of the policy and those cases' respective pleadings.

█ However, Old Republic's reading of he eight corners rule does not go far enough. The Texas Supreme Court's ruling in *National Union Fire* specified that, "[w]hen applying the eight corners rule, we give the allegations in the petition a liberal interpretation." Further, in case of doubt whether the allegations of a complaint against the insured state a cause of action under a policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141. "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (quoting *Merchants Fast Motor Lines v. National Union Fire Ins. Co.*, 919 S.W.2d 903, 905 (1996)). "It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct." *Id.* (quoting *Adamo v. State Farm Lloyds*

*Co.,* 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied)) (emphasis in original).

Federal courts adopt this view of the Texas Supreme Court's ruling. *See American States Ins. Co. v. Bailey,* 133 F.3d 363, 369 (5th Cir.1998) ("[u]nder [the eight corners] rule, an insurer's duty to defend is determined by the language of the insurance policy and a liberal interpretation of the allegations in the pleadings," which requires focus on the facts showing the origin of the damages.) Also, exceptions and limitations in a policy are strictly construed against the insurer. The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer seems more reasonable or a more accurate reflection of the parties' intent. *Id.; see also State Farm Lloyds v. Goss,* 109 F.Supp.2d 574, 579 (E.D.Tex. 2000).

Old Republic also offers a more recent Texas appellate decision which states that an insurer's duty to defend each of several similar claims is a contractual undertaking defined by the specific language of each policy and the factual allegations of each underlying plaintiffs' pleadings against the insured determine the insurers duty to defend each claim. *See Pilgrim Enterprises, Inc. v. Maryland Casualty Co.,* 24 S.W.3d 488, 492 (Tex.App.—Houston [1st Dist.] 2000, no pet. h.). In that case, seven different lawsuits were brought against a dry cleaner chain for chemical contamination of soil and water. The dry cleaner claimed its insurer had a duty to defend the actions. The appellate court, using the eight corners rule, applied the respective policies against the respective pleadings to determine the insurer's liability in each discrete case. In the case before this Court, however, RMQ is not seeking the cost of three different actions. It is seeking those costs associated with the defense of identical claims by the identical actors as in the fundamental lawsuit covered by Old Republic.

The Welches, through their various attorneys, alleged malpractice by RMQ in an action Old Republic defended. The same parties and attorneys sought precisely the same materials and discovery during their attacks on RMQ in *McClelland* and the Watson proceedings. Obviously, acquisition of those materials and files would directly support the Welches in their pursuit of damages in *Welch v. RMQ* regardless of the manner or forum in which they obtained it. Where a liberal interpretation of the Welches' allegations coupled with the factual circumstances giving rise to RMQ's indemnity demand yields this conclusion, it would be unreasonable to turn to the pleadings in the other two cases to complete the policy liability analysis.

The claims for damages included in the *Welch v. RMQ* action are sufficient to activate Old Republic's duty to defend RMQ against the demands for discovery and production of materials in the other two cases.

## C. Old Republic's "Relatedness" Theory.

Finally, Old Republic cites a lengthy series of cases for the proposition that an insurer cannot be held liable for the defense of an action simply because it might be "related" to some other action. Chief among these cases is a 1994 ruling by the California Supreme Court which held that an insurer had no duty to defend its insured in an action not directly covered under its indemnity policy simply because the result of that action had the *potential* to lead to another action which would be covered. *See La Jolla Beach & Tennis Club, Inc. v. Industrial Ind. Co.,* 9 Cal.4th

27, 43–44, 36 Cal.Rptr.2d 100, 884 P.2d 1048 (1994). That case involved a claim for the defense of a civil suit for damages where the outcome might have had an effect on a later, potential workers' compensation claim. That court further held that a civil suit for damages did not present a potentiality of a judgment within the indemnity provisions of the at-issue policy because workers' compensation benefits can never be awarded in a civil suit. *See Id.* at 46, 36 Cal.Rptr.2d 100, 884 P.2d 1048. Therefore, the very possibility of there being any potential for a later suit for which there would be policy coverage was foreclosed by the subject matter of the policy.

In the current case, there is no *"potentiality"* of a suit arising out of either the *McClelland* or Watson cases, nor was there ever any such claim by RMQ. The *Watson v. RMQ* lawsuit was real, ongoing, and active. Those plaintiffs or their counsel were the same individuals seeking the same ends in each case. They were not "separate" or "related by potentiality" in the sense argued by Old Republic. As such, the "relatedness" doctrine and case precedents offered by Old Republic are inapposite to this action.

## IV. Conclusion.

Texas law is clear as it regards the application of its eight corners rule and case-by-case examination of policies and pleadings. The ruling of this Court does nothing to disturb the methodology of Texas law. However, it seems clear that the Texas methodology pertains to reviewing the circumstances of discrete legal actions and discrete parties. This case is unique in that regard. It involves a set of parties and their counsel who, having filed an underlying malpractice suit, then pursued the aims of that suit in other fora, for the apparent principal purpose of advancing the underlying suit rather than the other actions. On that basis, this Court has no trouble applying the four corners of Old Republic's policy to a liberal interpretation of the four corners of the allegations in the *Welch* pleadings to determine that Old Republic has a duty to indemnify the cost of RMQ's defense against the identical attacks in the other two fora.

There being no material issue of fact remaining, it is, therefore,

ORDERED, that Plaintiff's Motion for Partial Summary Judgment be GRANTED as to determination of liability. Plaintiff must prove the cost of its defense and damages.

ORDERED, that the Defendant's Cross–Motion for Summary Judgment be DENIED.