[No. A085913. First Dist., Div. Two. June 8, 2000.]

THOMAS J. CULLIGAN III et al., Plaintiffs and Appellants, v. STATE COMPENSATION INSURANCE FUND, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

430

**COUNSEL**

Aldeson, Hess & Kelly, Randy M. Hess and Quentin F. Mommaerts for Plaintiffs and Appellants.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad and Thomas M. Hanson for Defendant and Respondent.

## OPINION

**LAMBDEN, J.**—This is an appeal by plaintiffs from a judgment for defendant State Compensation Insurance Fund (State Fund) entered after the superior court granted summary judgment. The action, brought by Thomas J. Culligan III, individually and doing business as Culligan Management Company (collectively Culligan), grows out of State Fund's refusal to defend or indemnify Culligan, under a workers' compensation and employer's liability insurance policy, in a third party action brought against Culligan by former Culligan employees. We will affirm the judgment.

### BACKGROUND

Culligan conducted business at offices in a building at 3700 S. El Camino Real, San Mateo, where it employed clerical and bookkeeping workers, among them Nancy Landry, Patricia Ciampi and Cindy Drury (collectively the workers).

In an action filed in July 1993 (*Landry v. Culligan Management Corp.* (Super. Ct. San Mateo County, 1993, No. 384294)) (the *Landry* action), the workers sued Culligan. In a first amended complaint filed that December, they alleged (1) breach of employment contract and wrongful termination, (2) breach of the implied good faith covenant, and (3) tortious wrongful discharge. The essence of their claims was that each of them was actually or constructively discharged in late 1992—on a pretext of poor job performance but in fact in retaliation for having complained about noxious odors coming from printing and dry cleaning businesses leasing space from Culligan in the same building. They alleged respiratory distress, headache, nausea and other health problems caused by the odors while employed, but the relief they sought in the complaint was only for lost wages and benefits plus emotional distress arising from the firing and loss of employment. Two of the workers, Landry and Ciampi, filed workers' compensation claims for the respiratory and related problems caused by the fumes, and State Fund paid out on those claims under the workers' compensation portion of the policy at issue here. The workers also sued the dry cleaner, Nou Veau Cleaners, which cross-complained against Culligan for indemnity and fault apportionment. Culligan successfully demurred to the cross-complaint, and State Fund agreed to pay costs associated with that defense.

At issue here is what State Fund refused to do. When first tendered the defense of the *Landry* action in 1994, State Fund accepted but under a reservation of rights. Two Court of Appeal decisions had recently held that there could be a duty, under a workers' compensation policy like the one here (part 1 of the policy), to defend a civil action for damages for wrongful termination (*Wong v. State Compensation Ins. Fund* (1993) 12 Cal.App.4th 686 [16 Cal.Rptr.2d 1] (*Wong*)), and the Supreme Court had taken up one of those decisions in *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27 [36 Cal.Rptr.2d 100, 884 P.2d 1048] (*La Jolla*). State Fund thus accepted the tender but reserved its right to withdraw should either of the precedents be depublished or reversed. In December 1994, the Supreme Court reversed in *La Jolla* and disapproved *Wong*. (*La Jolla, supra,* 9 Cal.4th at pp. 31, 46 & fn. 4.) State Fund accordingly withdrew its defense upon the finality of *La Jolla*, in January 1995.

Seventeen months later, in June 1996, Culligan tendered the defense again, this time claiming potential coverage under part 2 of the policy, the employer's liability or so-called "gap filler" portion. State Fund saw no such potential and rejected the tender, and Culligan settled the *Landry* action, securing a dismissal and release later that month.

Culligan filed this action in May 1997, raising in an amended complaint causes of action against State Fund for breach of contract and declaratory relief (first and second), breach of the good faith covenant (sixth), fraud (seventh), and unfair business practices (eighth). Having sustained a prior demurrer with leave to amend, the court sustained a demurrer to the amended fraud cause of action without further leave.

The remaining four causes of action were disposed of by the summary judgment we now review, a ruling that mooted a motion by Culligan for summary adjudication. The judgment was final as between these parties and thus appealable, even if other causes of action might have remained against another defendant. (*Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122]; *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [122 Cal.Rptr. 745, 537 P.2d 865].)[1]

## I. *Review Standards*

"A motion for summary judgment must be granted if all of the papers submitted show 'there is no triable issue as to any material fact and

---

[1]Culligan, suing additionally as trustee under a will, had also raised causes of action (third through fifth) against State Farm Fire and Casualty Company (and related entities) concerning coverage under a general liability policy issued by that insurer. A judgment affecting those parties is the subject of another appeal currently in our docket (*Culligan v. State Comp. Ins. Fund* (A086094, app. pending)).

. . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . .' ([Code Civ. Proc.,] § 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleading to show . . . a triable issue of material facts exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . .' (*Id.*, subd. (o)(2); *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].)" (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].)

■ Summary judgment rulings are reviewed de novo (*Scheiding v. Dinwiddie Construction Co., supra*, 69 Cal.App.4th at p. 69; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]), including those granting the motion (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]). We independently interpret a written contract when no extrinsic evidence and related credibility questions were presented below. (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632].) "The interpretation of a written instrument . . . is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) "The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument . . . ." (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].)

■ Insurance contracts are governed by ordinary rules of contract interpretation, the fundamental goal of which is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs. If policy terms are used by the parties in a technical sense or a special meaning is given to them by usage, this use or meaning controls judicial interpretation. (*La Jolla, supra*, 9 Cal.4th at p. 37.)

■ An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract. If asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (ordinarily the insurer) in order to protect the insured's reasonable expectation of coverage. (*La Jolla, supra,* 9 Cal.4th at pp. 37-38.)

■ A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. The carrier must defend a suit which *potentially* seeks damages within the coverage of the policy. Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no covered damages are ultimately awarded. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*).)

Whether the insurer owes a duty to defend is determined in the first instance by comparing the allegations of the complaint with the terms of the policy, but facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Horace Mann, supra,* 4 Cal.4th at p. 1081.) This is so because pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 296 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. (*Horace Mann, supra,* 4 Cal.4th at p. 1081.)

## II. *Breach of Contract*

We review a standard "Workers' Compensation & Employer's Liability Insurance Policy" that affords coverage in two parts. Part 1, titled "WORK-ERS' COMPENSATION INSURANCE," is not directly at issue but applies to "bodily injury by accident or bodily injury by disease" "caused or aggravated by the conditions of your employment" and pays the costs of "the benefits required of you by the workers' compensation law." Part 2, titled "EMPLOYER'S LIABILITY INSURANCE," likewise applies to "bodily injury by accident or bodily injury by disease" "caused or aggravated by the conditions of your employment" but pays "all sums you legally must pay as

damages because of bodily injury to your employees eligible for benefits under this policy, provided the bodily injury is covered by this employer's liability insurance."

Part 2 coverage is subject to subpart "C" exclusions that include *"any obligation imposed by a workers' compensation,* occupational disease, unemployment compensation or disability benefits *law* or any similar law" and *"damages arising out of the discharge of,* coercion of or discrimination against *any employee in violation of law.*" (Italics added.) We will refer to these as the workers' compensation and wrongful discharge exclusions. Reinforcing the existence of various limitations on coverage, subpart "D" provides that State Fund will defend "any claim, proceeding or suit against you for damages *payable by this insurance*" (italics added).

The Supreme Court has noted generally, in examining a very similar policy: "[E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a 'gap-filler,' providing protection to the employer in those situations, where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law. [Citation and fn.] Generally, these two kinds of coverage are mutually exclusive." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916 [226 Cal.Rptr. 558, 718 P.2d 920] (*Producers Dairy*).) Speaking of the employer's liability coverage, the court added, "The policy is *not* a general liability policy providing coverage for injuries to members of the general public; instead it provides coverage to employers for those injuries to their employees not covered by workers' compensation." (*Id.* at p. 917.)

As recounted in the background section of this opinion, State Fund initially accepted a tender in this case based on Court of Appeal precedent ultimately overruled in *La Jolla.* Construing a policy nearly identical to State Fund's, the Supreme Court held that no conceivable coverage existed, regarding an employee's civil suit for wrongful discharge, under the workers' compensation portion of the policy. (*La Jolla, supra,* 9 Cal.4th at pp. 41-46.) The court restated its observations from *Producers Dairy* (*La Jolla, supra,* at pp. 36-37, quoted *ante*), adding: "Workers' compensation policies generally contain two types of coverage: The first is workers' compensation insurance . . . , 'under which the insurer agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled.' [Citation.] The second, which is optional, is employers' liability insurance . . . .

[Citation.] This insurance 'protects employers against lawsuits by employees who are injured in the course of employment, but whose injuries are not compensable under the workers' compensation laws.' [Citation.] This coverage 'also indemnifies employers against civil suits brought by employees.' [Citation.]" (*Id.* at p. 36.) The part 2 coverage in that case was identical with the coverage and pertinent exclusions here (*id.* at p. 32, fn. 1), but the court, reviewing a ruling made only under the workers' compensation part of the policy, declined to decide whether any coverage could have arisen under the employers' liability part (*id.* at p. 35, fn. 3). Culligan's arguments here go to that unresolved question.

■ We begin with what Culligan does *not* claim. First, it concedes that in light of the wrongful discharge exclusion, there was no potential coverage for the *Landry* action's "discharge" claims as such—i.e., harm arising from the firing and loss of employment itself. However, Culligan claims potential coverage for "underlying bodily injury," by which is meant bodily injury caused by exposure to noxious fumes *preceding* the actual or constructive discharge of each worker. Second, Culligan concedes that in light of the workers' compensation exclusion, there is no potential coverage for any *actual* claims filed for workers' compensation benefits. However, noting that only Landry and Ciampi actually filed for benefits, Culligan claims that bodily injury (or disease) as to Drury was potentially within coverage and thus required a defense—at least initially—of the entire action (see generally *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 59-60 [70 Cal.Rptr.2d 118, 948 P.2d 909]).

Culligan faces a pleading impediment to this theory, for the *Landry* complaint nowhere claims recompense for harms *preceding* the firings. It alleges the prefiring exposure to noxious fumes as causing physical harm and an unsafe work environment, but it carefully claims damages only (1) from the termination dates forward and (2) for lost wages and benefits, neither of which would be "bodily injury." Nevertheless, citing the prospect of amending the complaint and citing extrinsic facts that include, among other things, deposition testimony about respiratory distress experienced from the fumes, Culligan maintains that a covered claim was *potentially* presented. State Fund objected to those extrinsic facts and repeats those objections here, but we have no need to resolve them. Even if the evidence was admissible and did raise the possibility of an amendment to claim bodily harm from workplace exposure to the toxic fumes, we must hold that the workers' compensation exclusion foreclosed any potential for coverage. This also leaves no need to decide other disputes, such as whether a bodily injury claim would fall within basic coverage for "disease" or "accident" or might otherwise be excluded.

Culligan rests its exclusionary distinction, between benefit claims made and not made, on the wording "any obligation imposed by a workers' compensation . . . law . . . ." In Culligan's view, this is at least ambiguous, for "obligation imposed" connotes benefits for which the employer has already become obligated, and no obligation can arise until a worker files a claim. Had State Fund desired an exclusion for all *potential* obligations, we are urged, it could have said something like " 'any obligation for which the insured . . . may be held liable under any workers' compensation or occupational disease law.' " (*Transamerica Ins. Co. v. Superior Court* (1994) 29 Cal.App.4th 1705, 1715 [35 Cal.Rptr.2d 259].) Said the appeal court of that language, "This clearly indicates that where workers' compensation liability exists, there is no coverage under the employer's liability portion of the Policy, thereby affording only defense and indemnity for the workers' compensation claim." (*Ibid.*) Use of the phrase "may be held liable," Culligan maintains, would have clarified that potential rather than actual liability is the test, whereas it is reasonable to interpret "any obligation imposed" as meaning only claims already made.

We reject the claim of ambiguity. It would be stronger were there no context or case law history for this language, but there is. Taking precedent first, the alternative phrase "may be held liable" has been called clear in this regard (*Transamerica Ins. Co. v. Superior Court, supra,* 29 Cal.App.4th at p. 1715) and may have been better suited than the language used here, but other formulations have also been held unambiguous. An exclusion for workers' compensation benefits " 'either payable or required to be provided' " (*Bailey v. Interinsurance Exchange* (1975) 49 Cal.App.3d 399, 402 [122 Cal.Rptr. 508]) was held to "manifest[] a clear intention to exclude coverage for any injury incurred in the course and scope of employment" (*id.* at p. 403), the court holding that this did *not* require that the worker actually receive workers' compensation benefits (*id.* at p. 402). That case also noted general high court guidance "that a clause which can, without conflicting or creating an ambiguity, when read in conjunction with other parts of the policy, be interpreted as excluding persons eligible for work[ers'] compensation benefits, will serve to deny coverage to such persons whether or not they receive such benefits." (*Id.* at p. 403, citing *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103].)

All of this serves the so-called "compensation bargain" long recognized in the case law. The employer assumes liability for industrial injury, without regard to fault, in exchange for limitations on liability amount, and the employee receives relatively swift and certain payment of benefits (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 697 [21 Cal.Rptr.2d 72, 854 P.2d

721]) while sacrificing, through the exclusivity feature of workers' compensation (Lab. Code, § 3602), the right to bring a civil suit for damages. "Hence, it has become commonplace in various forms of medical and disability insurance policies to include an exclusion from the policy for benefits obtainable under work[ers'] compensation law." (*Bailey v. Interinsurance Exchange, supra,* 49 Cal.App.3d at p. 403.) "[O]btainable" summarizes the matter well, for it is the availability—not actual use—of the workers' compensation remedy that is key to the compensation bargain.

Culligan cites no case holding that exclusionary language like that used here—"any obligation imposed" by workers' compensation—comes into play only where an employee has actually applied for or obtained benefits, and we find that construction unreasonable in light of the policy as a whole and the public policy described above. The "obligation imposed" by the workers' compensation law is readily understood to mean the obligation as an employer, under workers' compensation, to provide benefits. That inchoate obligation exists whether or not an employee actually chooses to seek benefits. The contrary view advanced by Culligan would oddly place in the employee's hands (by a decision to seek or not seek benefits) the scope of coverage, and could create delay and uncertainty in determining in any given case whether a claim made resulted in an actual payment "obligation."

Nor would Culligan's view comport with the evident purpose of the two-part coverage provided by the policy. The policy provides in its "GENERAL SECTION" that it does *not* apply to any "[e]mployees who are excluded under the workers' compensation law . . . ." Part 1 then covers *actual* benefit obligations incurred. Part 2 covers situations where the employee, while not "excluded" from the workers' compensation system, may not be required to use it exclusively (cf. *La Jolla, supra,* 9 Cal.4th at p. 36). Under Culligan's construction, that structural distinction would be lost, for an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it and consequently create a duty to defend. The cost limits of the compensation bargain would be lost, all at the whim of the employee.

All evidence showed that any asserted "bodily injury" or "disease" claims from the *Landry* action concerned employees who were employed by Culligan and subject to the remedy of the workers' compensation law.

Accordingly, as a matter of law, coverage was precluded by the workers' compensation exclusion.[2]

We reach that conclusion without resort to judicial notice. State Fund has requested discretionary notice (Evid. Code, §§ 459, 452, subd. (d)) of two filings made by Culligan in the *Landry* action in support of its successful demurrer to the *Nou Veau* cross-complaint. In each one, Culligan argues, 180 degrees from its position here, that the pleading was barred by the exclusivity provisions of the workers' compensation law. This may well be embarrassing to Culligan, but we generally do not consider matters, like these, that were not before the trial court when it ruled. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *People's Home Sav. Bank v. Sadler* (1905) 1 Cal.App. 189, 193-194 [81 P. 1029].) We have resolved the exclusion argument in State Fund's favor based solely on what was before the court below, and State Fund has not articulated any legal or equitable basis that would render the new matters material. They appear unnecessary to our decision, and so we deny the request. (Cf. *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

Given the policy language, context, and nature and kinds of risks covered by the policy (*La Jolla, supra,* 9 Cal.4th at p. 39), we uphold the court's ruling that the *Landry* action raised no claims potentially within policy coverage and that the cause of action for breach of contract (first) accordingly failed. It follows that the dependent cause of action for declaratory relief (second) failed as well.

---

[2]There is no merit to Culligan's claim that the exclusivity bar could not be invoked because it was not pleaded as a legal defense. Culligan's cited authorities are not on point. One involved statutes of limitation (*Garriott Crop Dusting Co. v. Superior Court* (1990) 221 Cal.App.3d 783, 796-797 [270 Cal.Rptr. 678] [statute was raised but not ruled upon, and factual questions of equity appeared]), and the other contains only a general statement on pleading affirmative defenses (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1060 [40 Cal.Rptr.2d 116, 892 P.2d 150]).

Moreover, State Fund did plead the policy exclusions generally, stating as its first affirmative defense that every cause of action was "barred by the terms of the alleged State Fund insurance contracts, including those identified in this answer, and other terms, conditions, limitations and *exclusions* in the State Fund insurance contracts. State Fund reserves the right to amend its answer to the Complaint to assert any *additional* defenses arising from the terms of the alleged State Fund insurance contracts, and/or applicable insurance contract terms, provisions, exclusions, conditions, or limitations as may become apparent during the continuing course of discovery in this action." (Italics added.) This was not a case where the exclusivity bar was a matter extrinsic to the pleadings. The bar was also not *additional* but written into a contract that was an exhibit incorporated into the complaint. We are cited no authority that anything further was required of State Fund in these circumstances, and the record shows that Culligan was not misled or surprised.

The demurrer to the cause of action for breach of the good faith covenant (sixth) was sustained because there was neither a duty to defend nor a breach of contract, and Culligan concedes that lack of coverage disposes of the matter. Because there was no potential coverage as a matter of law, there was no bad faith or unfair dealing in State Fund denying the tender (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1104-1105 [53 Cal.Rptr.2d 229]), and the court correctly discounted a contrary expert opinion offered by Culligan.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.

Petition for a rehearing was denied July 7, 2000, and appellants' petition for review by the Supreme Court was denied August 23, 2000.

---

*See footnote, *ante*, page 429.