[No. G032508. Fourth Dist., Div. Three. Dec. 23, 2004.]

FRED STEPHENSON, as Trustee, etc., Plaintiff and Appellant, v.
ARGONAUT INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Turner, Reynolds, Greco & O'Hara, Frederick E. Turner and Glen R. Segal for Plaintiff and Appellant.

Law Offices of Andre Hassid, Andre Hassid; Law Offices of Daniel J. Spielfogel and Daniel J. Spielfogel for Defendant and Respondent.

## Opinion

**RYLAARSDAM, J.**—Jimmy Guardado recovered a judgment against Enniss Enterprises (Enniss) for injuries he suffered while working at Enniss's place of business. Plaintiff Fred Stephenson, the trustee of Commercial Conservancy No. 1, is now doing business as Enniss (hereinafter collectively referred to as plaintiff). Plaintiff sued its general liability insurer, two insurance brokerages, an insurance agent, plus defendant Argonaut Insurance Company, its workers' compensation carrier. The fifth, sixth, and seventh causes of action of the third amended complaint sought recovery for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud against defendant for its failure to provide plaintiff with a defense and

indemnification in the Guardado action. The trial court dismissed the action as to defendant after sustaining its demurrer to the complaint without leave to amend.

■ Plaintiff appeals this judgment. Since defendant's policy is not ambiguous and no potential for coverage of Guardado's civil action existed under it, we affirm the trial court's judgment.

## FACTS

■ This appeal is taken from a dismissal entered after a demurrer was sustained to the third amended complaint without leave to amend. We assume the truth of all well-pleaded factual allegations, plus any matter that may be judicially noticed. (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372]; *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1104 [58 Cal.Rptr.2d 133].)

Plaintiff alleged that it decided to "outsource substantially all of its employee needs with leased employees." It "entered into a contract with Builders Staff Corporation [BSC] whereby BSC agreed to employ persons recommended by [p]laintiff and furnish those employees to [p]laintiff . . . ." The contract required BSC "to carry worker's compensation insurance for those workers hired at [p]laintiff's recommendation and . . . to provide [p]laintiff a certificate evidencing such insurance."

A broker obtained a "workers compensation and employers liability policy" from defendant "covering employees of BSC furnished to [p]laintiff under the BSC Agreement. . . . Based on a certificate of insurance issued by [d]efendants, [p]laintiff believe[d] . . . [it] was insured for any claims made by leased employees provided by BSC. . . . [Defendant] was aware of and approved . . . issuance of the certificate of insurance showing [p]laintiff as a named insured . . . ."

BSC "furnished to Plaintiff" a person named Jimmy Guardado. "Because of the loose contractual relationship between BSC and [p]laintiff, there was a potential issue . . . whether Guardado was the employee of [p]laintiff. Plaintiff supervised and directed the activities of Guardado and otherwise controlled his duties . . . ."

In late 1997, Guardado "filed a complaint in the Superior Court" against plaintiff "for certain personal injuries suffered by Guardado" while "he was . . . working at [p]laintiff's place of business doing the job of a sand washer." Initially, plaintiff's general liability insurer, Clarendon America Insurance

Company, provided it with a defense in the Guardado lawsuit. But in early 1998, Clarendon withdrew its defense predicated "on the basis that Guardado was a leased worker and . . . excepted from coverage under the [general liability] policy."

Plaintiff alleged it tendered the Guardado action to defendant in September 1998, but defendant "failed to even acknowledge receipt of this tender." It "tendered the Action to [defendant]" a second time in April 2001. Defendant rejected this tender, in part, because "the Argonaut Policy does not include a duty to defend the Action." Plaintiff allegedly incurred over $300,000 in attorney fees and costs defending the Guardado action. Ultimately, Guardado recovered a $1.75 million default judgment against plaintiff due to plaintiff's failure to comply with discovery orders.

In demurring to the third amended complaint, defendant argued that, even if "[plaintiff] was an insured under the Policy" and had employed Guardado, no duty to defend or indemnify plaintiff existed because "the [w]orkers' [c]ompensation [e]xclusion applies . . . yielding the . . . result of no coverage." At defendant's request, the trial court took judicial notice of records from Guardado's workers' compensation claim file, and after sustaining its demurrer without leave to amend, dismissed it from the action.

## DISCUSSION

*Introduction*

The primary issue presented in this case is whether plaintiff has shown either it alleged facts establishing the Guardado action created a potential for coverage under defendant's insurance policy or a reasonable possibility exists that it can amend the pleading to assert a potential for coverage. If so, the trial court's judgment must be reversed. Otherwise, the judgment must be affirmed. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590 [79 Cal.Rptr.2d 134]; *Michaelian v. State Comp. Ins. Fund, supra,* 50 Cal.App.4th at p. 1105.)

Plaintiff attached a copy of the policy to its amended complaint. The document, denominated a "workers compensation and employers liability insurance policy" (capitalization omitted), contains two parts. Part one provides workers' compensation coverage for "the benefits required . . . by the workers compensation law" for "bodily injury by accident or . . . by disease." Under it, defendant promised "to defend at [its] expense any claim, proceeding or suit against [plaintiff] for benefits payable by this insurance." Part two applies "to bodily injury by accident . . . or disease" if it "ar[os]e out of and in the course of the injured employee's employment . . . ." Under

this part, defendant promised it would "defend, at [its] expense, any claim, proceeding or suit against [plaintiff] for damages payable by this insurance." However, part two contained an exclusion which declared, "[t]his insurance does not cover: [¶] . . . [¶] 4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law . . . ."

█ In *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27 [36 Cal.Rptr.2d 100, 884 P.2d 1048], the Supreme Court explained the nature of this type of insurance policy. "Workers' compensation policies generally contain two types of coverage: The first is workers' compensation insurance (part 1 in the policy at issue in this case), 'under which the insurer agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled.' [Citation.] The second, which is optional, is employers' liability insurance (part 2 in the policy at issue in this case). [Citation.] This insurance 'protects employers against lawsuits by employees who are injured in the course of employment, but whose injuries are not compensable under the workers' compensation laws.' [Citation.] This coverage 'also indemnifies employers against civil suits brought by employees.' [Citation.] [¶] '[E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law. . . . Generally, these two kinds of coverage are mutually exclusive.' [Citation.]" (*Id.* at pp. 36–37.)

█ Although in this appeal, plaintiff focuses solely on defendant's obligation to provide a defense under part two of defendant's policy, in the trial court it relied on part one. But, as defendant notes, any attempt to rely on part one is doomed to fail. *La Jolla Beach & Tennis Club, Inc.,* held a plaintiff-employer had no reasonable expectation its workers' compensation insurer would provide it with a defense to a former employee's civil action filed in the superior court seeking damages for wrongful termination. "Construing the workers' compensation portion to also include the duty to defend any claim asserted by an employee, including civil suits for damages, renders the employer's liability section superfluous. We do not believe this result is what the parties reasonably intended or expected. [¶] . . . [T]he policy in this case does not require Industrial to defend La Jolla in *any* proceeding. Rather, by its express language, the policy requires Industrial to defend La Jolla in 'any claim, proceeding or suit . . . for *benefits payable by this insurance.*' [Citation.]" (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., supra,* 9 Cal.4th at pp. 42–43.) "[A] civil suit for damages is no more a claim

for workers' compensation benefits than a criminal or disciplinary action is a civil suit for damages. [Citations.]" (*Id.* at p. 43.)

*The Breach of Contract Count*

The fifth cause of action alleged defendant breached its agreement "to defend" and to "pay all sums Plaintiff was legally required to pay as damages because of bodily injury to one of its employees and/or employees of BSC . . . ."

Plaintiff argues the pleading adequately alleged it was Guardado's "special employer" under defendant's policy, and that part two of the policy broadly obligated defendant to provide a defense for "any claim, proceeding or suit . . . for damages" arising "out of and in the course of the injured employee's employment . . . ." Alternatively, plaintiff argues the policy's language was ambiguous and it had a reasonable expectation of coverage.

Defendant concedes, for purposes of argument, the amended complaint sufficiently alleged plaintiff was an insured under the policy and that Guardado was plaintiff's employee. But it contends plaintiff failed to state a cause of action, arguing Guardado suffered an injury compensable under the workers' compensation law and it provided both a defense and indemnification to his workers' compensation claim. Thus, defendant contends, the exclusion in part two, declaring this part "does not cover" an obligation "imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law" applies in this case.

■ Case law supports defendant's interpretation of the policy. The Supreme Court has held an insurer's defense obligation arises when either "the underlying action potentially [seeks] damages covered by the indemnity provisions of the policy" (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., supra,* 9 Cal.4th at p. 39), or "the policy is ambiguous and the insured would reasonably expect coverage based on the 'nature and kind of risk covered by the policy.'" (*Id.* at p. 38; see also *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273–275, 276 [54 Cal.Rptr. 104, 419 P.2d 168].)

In *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903 [226 Cal.Rptr. 558, 718 P.2d 920], Sentry issued a workers' compensation and employers' liability policy jointly to Producers and LAS Corporation, a related, but legally separate entity. Noyes, an LAS employee injured while unloading a truck, applied for workers' compensation benefits from LAS and also successfully sued Producers in a civil action. Sentry paid workers' compensation benefits on behalf of LAS for Noyes's injuries, but refused to

defend or indemnify Producers against his civil lawsuit. In Producers's subsequent declaratory relief action, the trial court granted summary judgment to Sentry.

The Supreme Court affirmed, primarily on the ground the employers' liability portion of the policy did not obligate Sentry to indemnify Producers because its "liability to Noyes was not based on any employment relationship . . . , but arose instead from Producers's negligent maintenance of its delivery truck." (*Producers Dairy Delivery Co. v. Sentry Ins. Co., supra,* 41 Cal.3d at p. 913.) But the court alternatively found that, even if the policy's employer liability section applied to Producers, the exclusion created when liability exists under the workers' compensation law barred Producers's right to indemnification. "The exclusion applies because the Noyes's injuries created an obligation which Sentry *already satisfied* under the workers' compensation law, due to the benefits previously paid by Sentry to Noyes as an LAS employee." (*Id.* at p. 916.) Thus, Producers's proposed "dual recovery under a single policy is contrary to both the plain meaning of the policy itself, and the concept of employers' liability insurance as it is commonly understood." (*Id.* at p. 917.)

■ *Producers Dairy Delivery Co.* involved only the question of whether the insurer had a duty to indemnify the insured. (*Producers Dairy Delivery Co. v. Sentry Ins. Co., supra,* 41 Cal.3d at p. 908.) Generally, an insurer's obligation to defend is broader than its duty to indemnify and can arise even if the indemnification obligation never arises. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46–47 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) But *Producers Dairy Delivery Co.* is relevant here because that decision establishes there is no potential for coverage under part two of defendant's policy. Without the possibility of coverage under the policy, there is generally no duty to defend. (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 879–880 [103 Cal.Rptr.2d 1, 15 P.3d 223]; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

Subsequent appellate decisions have reached the same result as to the insurer's duty to provide a defense. In *Transamerica Ins. Co. v. Superior Court* (1994) 29 Cal.App.4th 1705 [35 Cal.Rptr.2d 259], the appellate court vacated a finding that an insurer issuing a workers' compensation and employer's liability policy was obligated to provide a defense in a civil action brought by a former employee who had also sought workers' compensation benefits. "[T]here is a clear exclusion in the amendment relating to the employer's liability portion of the Policy, excluding coverage 'for any obligation for which the insured or any carrier as his insurer may be held

liable under any workers' compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law. . . .' This clearly indicates that where workers' compensation liability exists, there is no coverage under the employer's liability portion of the Policy, thereby affording only defense and indemnity for the workers' compensation claim. A workers' compensation claim was successfully made in this case and a defense was provided to [the employer] for the claim." (*Id.* at p. 1715.) Here also, plaintiff concedes Guardado filed an application for workers' compensation benefits, defendant provided a defense to the claim, and paid benefits to Guardado.

*Culligan v. State Comp. Ins. Fund* (2000) 81 Cal.App.4th 429 [96 Cal.Rptr.2d 656] is even more apropos since it held the exclusion applies where there is a mere potential for workers' compensation liability even if the employee does not actually seek those benefits. There three people sued Culligan, their former employer, alleging they had been wrongfully terminated after complaining about noxious odors at work. But only two of the employees sought workers' compensation benefits for related respiratory problems. The insurer initially defended the civil action under the policy's workers' compensation part, but withdrew it after the Supreme Court issued its decision in *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., supra,* 9 Cal.4th 27. The insurer also declined a request to provide a defense under the policy's employer's liability section.

The Court of Appeal affirmed a judgment for the insurer. Culligan contended a potential for coverage existed because one employee did not seek workers' compensation benefits and the "bodily injury . . . as to [that employee] was potentially within coverage . . . ." (*Culligan v. State Comp. Ins. Fund, supra,* 81 Cal.App.4th at p. 437.) The appellate court disagreed. "Culligan cites no case holding that exclusionary language like that used here—'any obligation imposed' by workers' compensation—comes into play only where an employee has actually applied for or obtained benefits, and we find that construction unreasonable in light of the policy as a whole and the public policy described above. The 'obligation imposed' by the workers' compensation law is readily understood to mean the obligation as an employer, under workers' compensation, to provide benefits. That inchoate obligation exists whether or not an employee actually chooses to seek benefits. . . . [¶] Nor would Culligan's view comport with the evident purpose of the two-part coverage provided by the policy. . . . Part 1 . . . covers actual benefit obligations incurred. Part 2 covers situations where the employee, while not 'excluded' from the workers' compensation system, may not be required to use it exclusively [citation]. Under Culligan's construction, that structural distinction would be lost, for an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it

and consequently create a duty to defend. The cost limits of the compensation bargain would be lost, all at the whim of the employee." (*Id.* at p. 439.)

*Culligan* also eliminates plaintiff's alternative basis for finding a duty to defend—an ambiguity creating a reasonable expectation of coverage on the part of the insured. That court "reject[ed] the claim of ambiguity" as it related to part two's workers' compensation obligation exclusion. (*Culligan v. State Comp. Ins. Fund, supra,* 81 Cal.App.4th at p. 438.) "It would be stronger were there no context or case law history for this language, but there is. Taking precedent first, the alternative phrase 'may be held liable' has been called clear in this regard [citation] and may have been better suited than the language used here, but other formulations have also been held unambiguous. An exclusion for workers' compensation benefits ' "either payable or required to be provided" ' [citation] was held to 'manifest[] a clear intention to exclude coverage for any injury incurred in the course and scope of employment' [citation], the court holding that this did *not* require that the worker actually receive workers' compensation benefits [citation]. That case also noted general high court guidance 'that a clause which can, without conflicting or creating an ambiguity, when read in conjunction with other parts of the policy, be interpreted as excluding persons eligible for work[ers'] compensation benefits, will serve to deny coverage to such persons whether or not they receive such benefits.' [Citations.]" (*Ibid.*)

■ In addition, *Culligan* found the context in which the exclusion applies eliminated any ambiguity. "All of this serves the so-called 'compensation bargain' long recognized in the case law. The employer assumes liability for industrial injury, without regard to fault, in exchange for limitations on liability amount, and the employee receives relatively swift and certain payment of benefits [citation] while sacrificing, through the exclusivity feature of workers' compensation [citation], the right to bring a civil suit for damages. 'Hence, it has become commonplace in various forms of medical and disability insurance policies to include an exclusion from the policy for benefits obtainable under work[ers'] compensation law.' [Citation.] '[O]btainable' summarizes the matter well, for it is the availability—not actual use—of the workers' compensation remedy that is key to the compensation bargain." (*Culligan v. State Comp. Ins. Fund, supra,* 81 Cal.App.4th at pp. 438–439.)

■ This reasoning comports with the principles generally applicable to the construction of contracts, including liability insurance polices. " '[L]*anguage in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' [Citations.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co., supra,* 41 Cal.3d at p. 916,

fn. 7.) "Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at pp. 18–19.)

Alternatively, plaintiff contends the workers' compensation obligation exclusion is inapplicable here because, while Guardado may have been subject to the workers' compensation law, it was not. Plaintiff asserts, "[l]iability for workers' compensation exists only when both the employer and the employee are subject to the Act's compensation provisions. [Citation.] Since [defendant] incurred no workers' compensation obligation as to Enniss, the Part Two, [workers' compensation obligation] [e]xclusion . . . did not bar coverage for the underlying action within the insuring provisions under Part Two . . . ."

 This argument reflects a misunderstanding of workers' compensation law. First, if dual employment exists, both employers are liable for an employee's injuries. (*County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 405 [179 Cal.Rptr. 214, 637 P.2d 681] ["If one employer (the general employer) sends an employee to work for another party (the special employer) and both have the right to control the employee's activities, a dual employment exists," and "both the general and special employers are liable for any injuries to the employee"]; *American M. Ins. Co. v. Ind. Acc. Com.* (1937) 8 Cal.2d 585, 588 [67 P.2d 103] ["The Workmen's Compensation Act imposes upon special and general employers a joint and several obligation . . . and the employee may proceed against either or both of them"].) Plaintiff concedes it was Guardado's special employer, subjecting it to the workers' compensation law even if Guardado did not name it as his employer. Second, plaintiff's construction of defendant's policy would effectively convert it into a general liability policy "contraven[ing] the statutory prohibition that liability insurance does not include workers' compensation insurance (Ins. Code, § 108), and the Insurance Commissioner's rule that other classes of insurance may not be included in the same policy providing workers' compensation and employers liability insurance. [Citation.]" (*Producers Dairy Delivery Co. v. Sentry Ins. Co., supra,* 41 Cal.3d at p. 914.)

Finally, plaintiff asserts Guardado was not entitled to workers' compensation benefits because his injury occurred while "lubricating a sandwasher[,] . . . not a risk reasonably contemplated by [his] 'agreed compensation bargain' as an unskilled laborer." Guardado admittedly received workers' compensation benefits from defendant. Furthermore, plaintiff's contention is contrary to its position in the trial court where it argued Guardado's "injury was clearly within the scope of the workers['] comp[ensation law]." We treat this as an admission against plaintiff. (*Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1097–1098 [51 Cal.Rptr.2d 272, 912 P.2d 1220].)

The trial court properly held defendant's policy unambiguously eliminated any potential of coverage for plaintiff in Guardado's civil action.

## The Bad Faith Count

The sixth cause of action alleged defendant breached the covenant of good faith and fair dealing by unreasonably failing to investigate plaintiff's claim, provide it with a defense, or pay any policy benefits. The analysis of plaintiff's breach of contract claim disposes of plaintiff's bad faith count as well.

 "It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 36.) This conclusion conforms to the policies of contract law, including the rule " ' "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." ' [Citations.] In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement. [Citation.]" (*Ibid.*) Thus, "[a]bsent that contractual right . . . , the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' [Citation.]" (*Ibid.*) Since there was no coverage for Guardado's civil action under the policy, defendant could not have unreasonably declined to defend or indemnify plaintiff.

## The Fraud Count

The seventh cause of action alleged "the Certificate of Insurance issued . . . with [defendant's] approval and agreement, . . . represented that [p]laintiff was an insured under the . . . Policy," and "[t]o the extent [defendant] was correct" in denying plaintiff was a named insured, plaintiff suffered damages in the form of "having to incur attorneys' fees in defending the Action and . . . an unpaid judgment for $1,750,000 against it . . . ." But again, due to the lack of any potential coverage for Guardado's civil suit, plaintiff's assertion that defendant misrepresented its status as an insured did not result in any compensable injury.

 "To recover for fraud, the plaintiff must prove ' "detriment proximately caused" by the defendant's tortious conduct. [Citation.] Deception without resulting loss is not actionable fraud. [Citation.] "Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal

connection with the reliance on the representations must be shown." ' [Citations.] 'Damage to be subject to a proper award must be such as follows the act complained of as a legal certainty . . . .' [Citation.]" (*Goehring v. Chapman Univ.* (2004) 121 Cal.App.4th 353, 364 [17 Cal.Rptr.3d 39].)

The only fraud damages alleged in plaintiff's third amended complaint were the purported benefits due under the policy. Since plaintiff was not entitled to have defendant pay for either its defense of or the judgment obtained against it in the Guardado action, it suffered no compensable loss as a result of defendant's alleged fraudulent representation.

## DISPOSITION

Appellant's request for judicial notice is granted. The judgment is affirmed. Respondent shall recover its costs on appeal.

Sills, P. J., and Ikola, J., concurred.